FABRICATORS, INC., APPELLEE, v. FARMERS ELEVATOR, INC., APPELLANT.

277 N. W. 2d 676

Filed April 24, 1979. No. 41984.

Moodie & Moodie, for appellant.

Golby C. Uhlir of Ryan, Scoville & Uhlir, for appellee.

Heard before KRIVOSHA, C. J., McCOWN, CLINTON, and HASTINGS, JJ., and KELLY, L. W., JR., District Judge.

McCOWN, J.

This is an action by plaintiff, Fabricators, Inc., to recover money due on an oral agreement for the sale of certain equipment to be constructed and installed in the grain elevator of the defendant, Farmers Elevator, Inc. Jury was waived and the District Court found for the plaintiff and against the defendant and entered judgment for the agreed amount of $6,138, plus interest and costs. The defendant has appealed.

The defendant, Farmers Elevator, Inc., a corporation, operates a grain elevator at Beemer, Nebraska, in which the defendant stores grain and mixes and sells livestock feeds. One of the ingredients used in the feeds mixed by defendant was high urea protein, which is available in either a meal or pellet form. Defendant had been using pellets which are more expensive than the meal. Ralston Purina, a supplier of products for the defendant, recommended that the defendant switch from the pellets to meal. Ralston prepared drawings and specifications for equipment to enable the defendant to handle high urea protein meal in preparing and mixing livestock feeds in the defendant's elevator. The drawings and specifications were delivered to the plaintiff, Fabricators, Inc. The plaintiff reviewed the drawings and specifications with representatives of Ralston and of the defendant and submitted a formal quotation and bid for the construction and installation of the equipment for a total of $5,960, plus tax. The defendant accepted the plaintiff's bid and ordered the equipment. Plaintiff and defendant both understood that the equipment was to be used for handling and mix-

ing high urea protein meal in livestock feeds. The equipment was designed specifically for the defendant's elevator and would be useless in any other installation.

Plaintiff built the equipment for handling the high urea protein meal in accordance with the drawings and specifications. Installation of the equipment was begun on January 9, 1970, and completed sometime prior to April 14, 1970. At unspecified times between January 9, 1970, and April 14, 1970, various problems developed. The plaintiff adjusted the equipment and corrected the various problems as they occurred up to and including the installation of an inspection hole to check the flow of meal, which was installed on April 2, 1970.

The plaintiff's evidence was that the installation was completed on April 14, 1970, when the plaintiff billed the defendant for the purchase price of $5,960, plus tax of $178.80, for a total of $6,138.80. Plaintiff's evidence was that from April 2, 1970, until July 14, 1970, there was no communication from the defendant regarding the installation.

On July 14, 1970, the defendant discovered that the auger in the equipment system was putting out too much feed. The plaintiff agreed to remedy the problem and ordered a reducing gear on July 17, 1970. The gear was never installed. On July 23, 1970, the elevator building and equipment were destroyed by fire. At no time did the defendant pay for the equipment or notify the plaintiff that the equipment had been accepted or rejected. The trial court found generally for the plaintiff and entered judgment in the sum of $6,138, plus interest and costs.

The defendant contends that the equipment was unsatisfactory and did not conform to the contract, and that title to the equipment therefore remained in the seller. Defendant argues that the equipment never worked satisfactorily and that it was under-

stood that the title would not pass until the equipment worked properly. It is also argued that the provisions of previous written contracts made by defendant for purchase of elevator equipment from different parties should be read into the oral contract here. These contentions all involve factual issues which were resolved by the trial court and decided adversely to the defendant.

This case is governed by the provisions of the Uniform Commercial Code. When goods are tendered or delivered, the buyer has a right to inspect them before payment. § 2-513(1), U. C. C. If the goods do not conform to the contract, the buyer has the right to reject them. § 2-601, U. C. C. Section 2-602, U. C. C., provides: "(1) Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller." Section 2-606, U. C. C., also provides that acceptance of goods occurs when the buyer fails to make an effective rejection under subsection (1) of section 2-602, U. C. C., if the buyer has had an opportunity to inspect the goods.

In the present case the evidence of the plaintiff is that the equipment was completely installed and delivered in the possession and control of the defendant on April 2, 1970, and defendant was billed for the purchase price on April 14, 1970. Essentially, it is undisputed that delivery was not later than April 14, 1970. The plaintiff's evidence is that it received no communication of any kind from the defendant regarding the equipment from April 14, 1970, until July 14, 1970. The defendant's evidence was that there was a communication from the defendant to the plaintiff on April 29, 1970, but the evidence is undisputed that the defendant never at any time rejected the goods, nor notified the plaintiff of any rejection.

The District Court found that there was no rejection of the goods within a reasonable time. Under

the Uniform Commercial Code, rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller. § 2-602, U. C. C. Acceptance occurs when the buyer fails to make an effective rejection if the buyer has had a reasonable opportunity to inspect the goods. § 2-606, U. C. C.

In the case at bar jury trial was waived and the case was tried to the court. In determining whether the evidence supports the findings of the trial court in an action at law where the jury has been waived, the evidence must be considered in the light most favorable to the successful party, all conflicts must be resolved in his favor, and he is entitled to the benefit of every inference that can reasonably be deduced from the evidence. J. P. Theisen & Sons v. Aksarben Contracting Corp., 197 Neb. 19, 246 N. W. 2d 720.

The judgment of the trial court in an action at law where a jury has been waived has the effect of a verdict of a jury and it will not be set aside on appeal unless clearly wrong. McDowell Road Associates v. Barnes, 198 Neb. 207, 252 N. W. 2d 151.

The evidence here supports the findings and judgment of the trial court.

AFFIRMED.