DAIRYLAND INSURANCE COMPANY, AN INSURANCE
COMPANY, APPELLANT, V. EILEEN ESTERLING, WILLIAM
HEARON, AND KARLA DENAY HEARON, A MINOR,
APPELLEES.

290 N. W. 2d 209

Filed March 18, 1980. No. 42669.

Jewell, Otte, Gatz, Collins & Domina, for appellant.

Forrest F. Peetz, for appellee Esterling.

Heard before KRIVOSHA, C. J., BRODKEY and HASTINGS, JJ., and REAGAN and NORTON, District Judges.

BRODKEY, J.

Plaintiff below, Dairyland Insurance Company, has filed an appeal to this court, seeking to reverse an order of the District Court for Holt County which sustained a motion for summary judgment filed by the defendant, Karla Denay Hearon, by and through her father, William Hearon, and by William Hearon on his own behalf. In its order, entered on January 3, 1979, the trial court ordered, adjudged, and decreed that the defendants' motion for summary judgment be granted and that Dairyland Insurance Com-

pany (Dairyland) be required to defend the defendant, Eileen Esterling, and to provide coverage to said defendant in a pending action against her. In its appeal to this court, Dairyland assigns as error the failure of the trial court to grant judgment in its favor on defendants' motion for summary judgment, and also in allowing and granting attorney's fees and costs to Eileen Esterling. We reverse and remand.

The action in which the motion for summary judgment was filed was a declaratory judgment action brought by Dairyland to determine the rights of the various parties to an action for damages under a "Family Combination Automobile Policy" issued by Dairyland to Robert Esterling, husband of Eileen Esterling, on November 11, 1975. That policy provided, in part, that Dairyland would "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of * * * bodily injury, sickness or disease, including death resulting therefrom, * * * sustained by any person; [and also for any property damage] arising out of the ownership, maintenance or use of the owned automobile or any nonowned automobile, and the company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient."

Dairyland attached to its petition for declaratory judgment, as an exhibit, the petition in a case filed in the District Court for Holt County entitled Karla Denay Hearon, by and through her Father and Next Friend, William Hearon, Plaintiff v. Eileen Esterling, Defendant, Case No. 17133, which petition sets out and summarizes the salient facts giving rise to this litigation. It appears that on December 4, 1975, the mother of Karla Denay Hearon left her minor

daughter in the care, custody, and control of Eileen Esterling, the wife of the named insured, engaging her to babysit with Karla for a monetary consideration. It further appears that Eileen Esterling then took their pickup truck, the insured vehicle, and drove from O'Neill, Nebraska, to Neligh, Nebraska, taking with her her sister, her 4-year-old son Bradley Esterling, and Karla Hearon. Upon arriving in Neligh, Eileen Esterling and her sister got out of the parked pickup truck, the insured vehicle, leaving Bradley and Karla by themselves in the pickup. The petition alleges that Bradley "did take a cigarette lighter and set the plaintiff's coat on fire," resulting in injuries to the plaintiff. The source of the cigarette lighter is neither alleged in the petition nor shown in the record. Karla sustained severe injuries as a result of the fire. The grounds of negligence alleged against the defendant, Eileen Esterling, were that she failed to properly supervise the plaintiff, failed to protect the plaintiff from the acts of her 4-year-old son, and failed to provide safe premises for the plaintiff. Dairyland then filed its declaratory judgment action, asking the court to declare that the policy provision referred to above provided no coverage for this incident.

The principal issue presented in this appeal is whether or not coverage exists under the policy in question, particularly under the policy provisions quoted above. As a general rule, an insurance policy should be considered as any other contract, and should be given effect according to the ordinary sense of the terms used; and if those terms are clear, they will be applied according to their plain and ordinary meaning. Preferred Risk Mut. Ins. Co. v. Continental Ins. Co., 172 Neb. 179, 109 N. W. 2d 126 (1961). However, it is also a well-established rule that an insurance contract will be interpreted in accordance with the reasonable expectations of the insured at the time of the contract, and in case of

doubt, the policy will be liberally construed in favor of the insured. Neal v. St. Paul Fire & Marine Ins. Co., 197 Neb. 718, 250 N. W. 2d 648 (1977).

The phrase "arising out of the ownership, maintenance, or use of the owned automobile" has frequently been examined and interpreted by the courts to determine whether insurance coverage exists. In an annotation entitled "Automobile liability insurance: what are accidents or injuries 'arising out of the ownership, maintenance, or use' of insured vehicle," 89 A. L. R. 2d 150, it is stated: "A frequent question confronting the courts in determining whether a particular injury or accident is within the coverage provided by the 'ownership, maintenance or use' clause of an automobile liability insurance policy is the one of causal connection or relationship of the accident or injury to the ownership, maintenance, or use of a vehicle. All the cases agree that a causal relation or connection must exist between an accident or injury and the ownership, maintenance, or use of a vehicle in order for the accident or injury to come within the meaning of the clause 'arising out of the ownership, maintenance or use' of a vehicle, and where such causal connection or relation is absent coverage will be denied. The difficulty therefore relates mainly to the determination whether or not there was under the facts of the particular case the required causal relationship." See, also, 6B Appleman Insurance Law and Practice, §§ 4311 to 4330 (Buckley Ed., 1979).

One of the leading and frequently quoted cases dealing with this problem is National Union Fire Ins. Co. v. Bruecks, 179 Neb. 642, 139 N. W. 2d 821 (1966), where we held that the accidental discharge of a loaded gun in an automobile being used to transport a minor home after a hunting trip was not an accident within the contemplation of the term "arising out of the use" of an automobile, under the facts of that case. In Bruecks we stated: "The policy is

intended to cover any injury caused by an accident arising out of the use of an automobile and a reasonably liberal construction should be in order if we are to effectuate the purpose of the contract. * * *

"The words 'arising out of the use' are very broad, general, and comprehensive terms, and are ordinarily understood to mean originating from, growing out of, or flowing from."

In that case we also stated: "It would seem that the obligation to defend a suit for an insured should be determined on the basis of whether the petition filed against him attempts to allege a liability within the terms of the policy. In the tort action, which is the basis for this declaratory judgment action, there is no allegation set out in the petition which would indicate that the action was brought as one arising out of the use of a motor vehicle. * * * [T]he allegations of negligence * * * may be summarized as failing to unload the gun previous to entering the automobile and in attempting to unload the gun in a moving automobile. These allegations in no way predicate recovery on the use of the automobile as such. The gun did not discharge as a result of being in the vehicle or from any reason even remotely connected with the vehicle. It seems clearly apparent that the tort action is not premised upon any connection with the automobile in which the shooting occurred, except as describing the situs of the act. * * *

"It seems patent, however, that some causal relation must exist between the injury and the use of the vehicle to come within the ambit of 'arising out of the use of a vehicle.' "

In the instant case, the underlying tort petition does not allege that it was the act of igniting Karla's clothing that caused the injury. Rather, as previously stated, the petition alleges that the negligence of Eileen Esterling consisted of failing to supervise, failing to protect, and failing to provide

.

safe premises. In order to invoke coverage under the policy provisions, it is necessary that one of the three allegedly negligent acts must have arisen from "the operation, maintenance, or use" of the vehicle, and have caused the injuries to Karla. It seems clear that the first two allegations referred to cannot be said to have arisen out of the use of an automobile, and the attorney for Eileen Esterling conceded this point in his oral argument before this court. That being so, we need only consider whether the failure to provide safe premises arose out of the operation, maintenance, or use of the insured vehicle; or, to be more specific, we must determine whether the use of the vehicle as a playhouse for the children was within the intended policy coverage; and whether the injuries were the result of an accident arising out of the "use" of an automobile.

The case of Hartford Fire Ins. v. State Farm Mut. Auto. Ins., 264 Ark. 743, 574 S. W. 2d 265 (1978), is instructive and persuasive upon that question and involved a situation strikingly similar to that in the instant case. In the Arkansas case, two minors were playing inside the insured vehicle, a camper used primarily as a recreational vehicle, which was parked in a carport adjoining the residence of the insured. One of the minors inside the camper pointed a pistol at a child outside the camper. The pistol was not a part of the vehicle's equipment, but was customarily kept in a loaded condition in the vehicle. The weapon discharged, killing the child outside the camper. In finding no coverage under the automobile insurance policy, the Arkansas court stated: "We are of the view that the accidental death of [the child] cannot be said to be causally related to the use of the camper. As to causation, the accident could just have easily occurred in a field, in the driveway, or in a hunting lodge. The fact that the person discharging the pistol was inside the vehicle

at the time of this accident does not make the injury one 'arising out of the ownership, maintenance, or use' of the camper. Consequently, appellee's policy provided no coverage in this situation.'' We agree completely with the reasoning of the Arkansas court.

We note that appellees in their briefs have cited cases wherein coverage under the automobile liability insurance policies containing the same or similar provisions as those contained in the policy in this case has been found to exist in situations involving passengers who were bitten by dogs being transported in the vehicle. National Indemnity Co. v. Corbo, 248 So. 2d 238 (Fla., 1971); Hartford Accident & Indem. Co. v. Civil Service Employees Ins. Co., 33 Cal. App. 3d 26, 108 Cal. Rptr. 737 (1973). We believe that those cases are distinguishable from the instant case, as they involved accidents causally connected with the use of the insured vehicle. We are unable to conclude that the failure to provide safe premises for Karla, the minor child, made the injury to her one which arose out of the ownership, maintenance, or use of the vehicle. Furthermore, under the "reasonable expectations" test, we have difficulty in concluding that at the time of the inception of the insurance contract between Dairyland and the Esterlings, the parties contemplated or intended that using the vehicle as a playhouse for their minor children would constitute a use of the vehicle within the meaning of the policy. We decline to enlarge the coverage provided by the contract by judicial construction without regard to the intent of the parties when entering into the insurance contract.

We conclude, therefore, that the trial court erred in sustaining defendants' motion for summary judgment, and in finding that the plaintiff was legally obligated to defend Eileen Esterling, and to provide coverage to her. In view of our disposition of this matter, we also conclude that Mrs. Esterling is not

entitled to an award of attorney's fees and we reverse the District Court's award of such fees. We therefore reverse the order of the District Court and remand the case for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

REAGAN, District Judge, concurring.

I concur with the result reached in the majority opinion, but I disagree with certain conclusions stated and some of the reasoning for the decision reached. I also feel the majority opinion lacks sufficient directions for further proceedings by the trial court.

The majority opinion rightfully states the issue presented by this action: whether plaintiff is required to provide coverage to Eileen Esterling under the policy provision providing coverage for damages "arising out of the ownership, maintenance or use of the owned automobile." The opinion correctly states the salient facts giving rise to this declaratory judgment action, although it should be pointed out the only allegation of negligence in the underlying tort action which could even arguably be covered under this policy was the one claiming the insured "failed to provide a safe premises" for the injured minor.

I agree with the majority opinion that insurance policies are considered as any other contract, and given effect according to the ordinary sense of the terms used. Preferred Risk Mut. Ins. Co. v. Continental Ins. Co., 172 Neb. 179, 109 N. W. 2d 126 (1961). I agree with, and place emphasis on, the majority statement that ambiguities in policies should be liberally construed in favor of reasonable expectations of the insured. Neal v. St. Paul Fire & Marine Ins. Co., 197 Neb. 718, 250 N. W. 2d 648 (1977).

The majority then cites 89 A. L. R. 2d 150 and 6B Appleman Insurance Law and Practice §§ 4311 to 4330 (Buckley Ed., 1979) for the proposition there

must be a causal connection between the accident or injury and the ownership, maintenance, or use of the insured vehicle for coverage to be afforded. Although such may be a correct statement of the law, it may lead to an erroneous inference that the ownership, maintenance, or use of an insured vehicle must be *the proximate or a proximate cause* of the accident or injury. Cases collected, as well as text comments, in Appleman, *supra* at § 4317, establish that ownership, maintenance, or use of a vehicle need not be the direct and efficient cause of the injury, merely that some substantial nexus between the injury and the insured vehicle exist.

The case of National Union Fire Ins. Co. v. Bruecks, 179 Neb. 642, 139 N. W. 2d 821 (1966), also relied upon by the majority, is distinguishable from the instant case in at least two important aspects. In Bruecks, there were *no* allegations of negligence in the underlying petition which could even arguably relate to the ownership, maintenance, or use of the insured vehicle. Secondly, the underlying tort action was against a passenger who was totally unconnected with the *ownership or maintenance* of the vehicle where the injury occurred.

The majority opinion then moves toward the conclusion that Mrs. Esterling's *use of the insured vehicle as a playhouse* was not within the intended policy coverage. There are two problems with this reasoning. First, it assumes that it was the insured's intent to use the vehicle as a playhouse. This is an assumption based on absolutely no evidence and one which is contrary to the normal experience of mankind. Without endorsing the safety of such practice, one must recognize how frequently adults leave small children in automobiles for a few minutes (and sometimes longer) while they run into a store for a loaf of bread or a quart of milk. Secondly, it refers only to the *use* of the vehicle and disregards the term "maintenance."

As far as this court knows, "maintenance" is not defined within Dairyland's policy. The normal definition of this term would be an act or acts of keeping or supporting a particular object (such as the insured vehicle) in a state of good repair or condition. It has been indicated in the text cited by the majority that maintenance includes acts of either commission or omission *relative to the external* or mechanical condition of the vehicle. Appleman, *supra* at § 4315, p. 339. Although Hartford Fire Ins. v. State Farm Mut. Auto. Ins., 264 Ark. 743, 574 S. W. 2d 265 (1978), is similar to the instant case in some aspects, it is substantially different in others. That case was an action for contribution between insurance companies and was decided after a full evidentiary hearing. The opinion is premised on "use" of the insured vehicle, rather than "maintenance," and it is clear the trier of fact came to the conclusion the insured vehicle was in fact *being used as a "playhouse."*

With the ambiguity in the term "maintenance," the one underlying allegation of negligence that the insured "failed to provide a safe premises," a question of fact is presented on whether coverage exists. That could only be determined on a full and complete evidentiary hearing. If this analysis is correct, the decision reached by the court this term in MFA Ins. Companies v. Mendenhall, *ante* p. 430, 288 N. W. 2d 270 (1980), entitles either party to a jury trial as a matter of right. Such a trial would not of necessity terminate the controversy, for even if coverage should exist, Dairyland could still defend the tort action on the issue of damages or on the issue of whether Mrs. Esterling's failure to supervise was the *sole* proximate cause of the injuries sustained.

Because of this, the trial court should consider the broad discretion vested in it by section 25-21,154, R. R. S. 1943, to refuse to entertain a declaratory judg-

ment proceeding that would not terminate the uncertainty or controversy. The trial court could adequately protect Dairyland's rights in the tort action by requesting the jury to make specific findings of fact regarding the cause of the injury.