DENNIS HEMENWAY, APPELLEE, v.
MFA LIFE INSURANCE COMPANY, APPELLANT.
318 N.W.2d 70

Filed April 9, 1982. No. 44084.

Richard E. Mueting of Mueting & DeLay, for appellant.

Jewell, Otte, Gatz, Collins & Domina, for appellee.

Heard before KRIVOSHA, C.J., WHITE, and CAPORALE, JJ., and MURPHY and WHITEHEAD, D. JJ.

CAPORALE, J.

Dennis C. Hemenway, plaintiff-appellee, commenced this action for a declaratory judgment to determine whether a policy of health insurance issued by MFA Life Insurance Company (MFA), the defendant-appellant, provided coverage for a heart condition which manifested itself on or about March 13, 1978. The District Court of Nebraska in and for Antelope County entered a judgment against MFA, together with an award of attorney fees in favor of the plaintiff in the amount of $5,010.17 and costs.

MFA alleges, in summary, that the trial court erred in (1) finding the effective date of the policy in question to have been February 9, 1978; (2) finding that all conditions precedent had been met by Hemenway; (3) admitting evidence of conversations concerning policy limitations had between plaintiff and MFA's agent at the time the application for insurance was executed; and (4) awarding an attorney fee. We find the assignments, except as to the attorney fee, to be without merit and affirm as modified hereinafter.

A suit for declaratory judgment is an action sui

generis and may involve questions of both law and equity. The particular decision from which this appeal is taken involves, at the outset, questions of fact. As such, the parties were entitled to a jury trial. Neb. Rev. Stat. § 25-21,157 (Reissue 1979); *MFA Ins. Companies v. Mendenhall,* 205 Neb. 430, 288 N.W.2d 270 (1980); *State Farm Mutual Automobile Ins. Co. v. Kersey,* 171 Neb. 212, 106 N.W.2d 31 (1960). A jury having been waived, the judgment of the trial court on a fact issue has the effect of a jury verdict and will not be set aside unless clearly wrong. *MFA Ins. Companies v. Mendenhall, supra.* In determining whether the evidence supports the findings of the trial court in an action at law where a jury has been waived, the evidence must be considered in the light most favorable to the successful party, all conflicts must be resolved in his favor, and he is entitled to the benefit of every inference that can reasonably be deduced from the evidence. *Crawford v. Ham,* 209 Neb. 802, 311 N.W.2d 896 (1981); *Fabricators, Inc. v. Farmers Elevator, Inc.,* 203 Neb. 150, 277 N.W.2d 676 (1979); *State Farm Mutual Automobile Ins. Co. v. Kersey, supra.*

With the foregoing scope of review in mind, the record reveals that on February 9, 1978, as a result of a contact by the plaintiff, Loren Johnson, an insurance salesman for MFA, and Benny Rowe, district sales manager for MFA, arrived at the Hemenway residence to discuss possible health insurance coverage. The plaintiff selected a policy of insurance and Rowe assisted in filling out the application. The application indicates that plaintiff selected benefit schedules "F" and "G," which provided for $50 as maximum daily hospital room allowance and $500 as the maximum allowed under the surgical schedule. In the course of filling out the application, plaintiff mentioned to Rowe that he had received prior medical treatments for hernias, a fact which was noted in the application. After the application

was completed, the amount of the premium was determined to be $182.52, which was paid to MFA's agents with a check issued by the plaintiff's wife. This payment covered the premiums for the first 2 months for the health insurance policy purchased. Rowe also issued the Hemenways a "Conditional Coverage Receipt" which provided in part: "[V]oid if altered or modified or if draft or check given in payment is not honored. NO INSURANCE SHALL BE EFFECTIVE BEFORE POLICY DELIVERY TO OWNER UNLESS ALL THE CONDITIONS ON THE OTHER SIDE OF THIS RECEIPT ARE FULFILLED EXACTLY." The language on the other side of the receipt states: "CONDITIONS PRECEDENT

"Condition No. 1. Payment of Premium. Full payment of initial premium on selected mode must be made to an authorized agent of MFA Life Insurance Company on date of application.

"Condition No. 2. Insurability. MFA Life Insurance Company at its Home Office must determine to its satisfaction, according to its rules and practices, that as of the later date of the application or medical examination form, if required, the persons proposed for insurance were insurable for the plans and amounts applied for and at the rate of initial premium paid.

"Effective Date of Insurance. If above conditions are met, insurance shall be effective, subject to the provisions in the policies applied for, as of the later date of the application or medical examination form, if required."

We note that at no time prior to the issuance of the health policy was the plaintiff required to undergo any physical or medical examination.

Approximately 3 weeks after the application and check for payment were submitted to MFA's agents, Dennis Hemenway began to experience episodes of shortness of breath and dizziness. On March 13,

1978, plaintiff was examined by a physician in Omaha and was hospitalized to receive a series of tests to determine the cause of his illness. On March 25, 1978, plaintiff was informed that his shortness of breath was due to a blockage in the arteries leading away from his heart. Plaintiff subsequently, on March 29, 1978, underwent a triple coronary heart bypass operation.

On March 25, 1978, MFA issued health insurance policy No. D-031720 to the plaintiff which recites an effective date of March 16, 1978. On April 30, 1978, the plaintiff submitted a claim to MFA for payment of the medical expenses incurred in receiving treatment for his heart condition. MFA has denied all heart-related claims on the ground that the heart condition commenced prior to the March 16, 1978, effective date of the policy.

MFA contends that the application for insurance submitted by plaintiff did not contain any request to exclude coverage for inguinal hernias, and therefore the policy issued March 25, 1978, should be considered a counteroffer for insurance exempting coverage for inguinal hernias. Hemenway argues that he has met all conditions required by the conditional receipt to be afforded coverage as of February 9, 1978; that the policy issued conforms in all respects with the insurance for which he applied; and, therefore, the health insurance policy issued by MFA should not be considered a counteroffer.

The major issue before this court is the determination of when the health insurance policy became effective, February 9, 1978, as claimed by plaintiff, or March 16, 1978, as claimed by MFA.

We begin our analysis by reviewing the pertinent law which has developed in regard to "conditional" or "binding" receipts which are utilized by insurance companies, and which afford coverage to an applicant between the date of application and the actual issuance of the policy. In determining whether

coverage is afforded under a particular receipt, the specific language of the receipt must be taken into account. Liability of the insurer, if any, is dependent upon the language of the receipt, the facts of the particular case, and the intention of the parties. *Vernon v. Provident Life & Acc. Ins. Co.,* 266 S.C. 208, 222 S.E.2d 501 (1976).

Conditional receipts, as issued by MFA in this case, have been the subject of abundant litigation. See, Annot., 2 A.L.R.2d 943 (1948); 1 Couch on Insurance §§ 14:39 to 14:46 (2d ed. 1959); Comment, *Life Insurance Receipts: The Mystery of the Non-Binding Binder,* 63 Yale L.J. 523 (1953-54); Comment, *"Binding Receipts" in California,* 7 Stan. L. Rev. 292 (1954-55). The use of such receipts has developed into a common practice among insurance companies and results from the fact that an application for insurance is simply an offer, revocable at any time prior to acceptance. "In order to protect themselves from an applicant's change of mind, which often leads to financial losses due to the insurance company's expenditures on investigating the applicant, the companies developed prepayment policies. [Citations omitted.] The terms of the application suggesting that early payment of the premium accelerates the date of effective coverage serve to induce applicants to accept this option. Obviously, by so doing, the applicant is under the impression that some advantage accrues to him. As the court in *Hart v. Travelers Ins. Co.,* 236 App. Div. 309, 258 N.Y.S. 711, aff'd, 261 N.Y. 563, 185 N.E. 739, noted (p. 315): '[The applicant] did not believe that by furnishing this premium in full in advance he was doing something to his disadvantage—paying money for a period when he was not insured at all.' " *Simses v. North American Co. for Life & Health Ins.,* 175 Conn. 77, 83, 394 A.2d 710, 713 (1978). See, also, 43 Am. Jur. 2d *Insurance* §§ 216 to 218 (1969); 12A Appleman, *Insurance Law and Practice* § 7237

(1981). There is little question but that a conditional receipt may give rise to insurance coverage, even though the policy has not been issued, provided that the conditions for such coverage are met under the terms of the receipt. See, *Braman v. Mutual Life Ins. Co.,* 73 F.2d 391 (8th Cir. 1934); *Mofrad v. New York Life Ins. Co.,* 206 F.2d 491 (10th Cir. 1953); *Damm v. National Insurance Company of America,* 200 N.W.2d 616 (N.D. 1972); *Dunford v. United of Omaha,* 95 Idaho 282, 506 P.2d 1355 (1973); *Puritan Life Ins. Co. v. Guess,* 598 P.2d 900 (Alaska 1979).

In construing contracts of insurance in this jurisdiction, we have held that insurance policies should be construed as any other contract and should be given effect according to the ordinary sense of the terms used; and if those terms are clear, they will be applied according to their plain and ordinary meaning. *Dairyland Ins. Co. v. Esterling,* 205 Neb. 750, 290 N.W.2d 209 (1980); *Kent v. Dairyland Mut. Ins. Co.,* 177 Neb. 709, 131 N.W.2d 146 (1964). It is also well established that an insurance contract will be interpreted in accordance with the reasonable expectations of the insured at the time of the contract and, in case of doubt, the policy will be liberally construed in favor of the insured. *Dairyland Ins. Co. v. Esterling, supra; Dale Electronics, Inc. v. Federal Ins. Co.,* 205 Neb. 115, 286 N.W.2d 437 (1979); *Modern Sounds & Systems, Inc. v. Federated Mut. Ins. Co.,* 200 Neb. 46, 262 N.W.2d 183 (1978); *Neal v. St. Paul Fire & Marine Ins. Co.,* 197 Neb. 718, 250 N.W.2d 648 (1977); *Wyatt v. Woodmen Acc. & Life Co.,* 194 Neb. 614, 234 N.W.2d 217 (1975); *Bracy v. American Family Mut. Ins. Co.,* 189 Neb. 631, 204 N.W.2d 174 (1973). This rule appears to rest upon the ground that the drafting of the language found in insurance policies or receipts is in the hands of the insurance company.

In the present case, the conditional coverage receipt issued by MFA to the plaintiff clearly specifies that no insurance shall be effective prior to the de-

livery of the policy *unless* certain conditions are complied with. The first condition requires full payment of the initial premium on the date the application for insurance is made. That this condition was met is not disputed. On the contrary, the record clearly establishes that full payment of 2 months' premiums was made by the Hemenways on February 9, 1978, when the application for insurance was submitted to Rowe, district sales manager for MFA. The Hemenways were in full compliance with condition No. 1 as set out in the conditional receipt.

The second condition provides that MFA must determine that the applicant is insurable "according to its rules and practices" as of the later of the date of application or of a medical examination, if required. No medical examination was required; however, it is defendant's contention that Hemenway was not insurable on the date of application according to MFA's rules and practices. MFA alleges that the health insurance applied for by plaintiff contained no exclusion for inguinal hernias and that they made a counteroffer of insurance with the policy dated March 25, 1978, which contained an endorsement excluding inguinal hernias.

The problem with the quoted language of the receipt, as has been noted in numerous cases, is that it appears to lodge the insurance company with an almost arbitrary power to decide whether the applicant was insurable on February 9, 1978. Whether this language sets up a subjective or an objective standard of insurability is not clear, but the language as to plans and amounts applied for, benefits, and premium rates does suggest the existence of some ascertainable standard of insurability. In this regard, we note that the cases dealing with this language in conditional receipts have applied an objective test of insurability to determine the effective date of coverage. As stated by the Maryland Court of Appeals in *Simpson v. Prudential Ins. Co.*, 227

Md. 393, 406, 177 A.2d 417, 425 (1962): "We think that the clause means that the applicant must meet an objective standard of insurability, and that this standard is the company's own standard for the plan, the amount and the benefits applied for, and at the rate applied for. Honest satisfaction is the standard usually applied under contracts calling for the satisfaction of a party, in the absence of some clear indication to the contrary. Somewhat by analogy, we think that in life insurance 'satisfaction' premium receipts an objective standard of satisfaction to comply with a condition should be applied, if such would be its fair meaning to an ordinary person not versed in the niceties of life insurance to whom such a receipt might be offered. [Citations omitted.] We think that at least an ambiguity is presented and that in accordance with the established rule it should be resolved against the party whose language it is—that is, against the insurance company. [Citations omitted.]" Or as stated by Judge Hand in *Gaunt v. John Hancock Mut. Life Ins. Co.*, 160 F.2d 599, 602 (2d Cir. 1947): "[I]nsurers who seek to impose upon words of common speech an esoteric significance intelligible only to their craft, must bear the burden of any resulting confusion."

As is pointed out in 12A Appleman, *Insurance Law and Practice* § 2739 (1981), the determination of insurability is a question of fact to be determined by the trier of fact. The record shows that the trial court resolved this issue in favor of the plaintiff. The insurance policy issued to the plaintiff clearly conformed in amount of coverage applied for, the benefit schedules applied for, and the premium rate charged the plaintiff at the time the application was submitted. As the plaintiff was not required to take a medical examination, it is clear that he was insurable as of February 9, 1978.

We must also reject MFA's contention that the policy of insurance issued on March 25, 1978, consti-

tuted a counteroffer of insurance to that applied for by the plaintiff. The application submitted by the plaintiff clearly reveals that he selected health insurance which included coverage under benefit schedule "G." This schedule, which provides for surgical and in-hospital treatment coverage, contains the following exclusion: *"EXCLUSIONS: . . . (a) hernia of any kind . . . ."* (Emphasis supplied.) Since the policy of health insurance applied for by plaintiff provided for the exclusion of hernia coverage of any kind, the addition of the inguinal hernia endorsement by MFA does not vary the terms of the insurance applied for by plaintiff and cannot constitute a counteroffer of insurance.

In view of the foregoing analysis, it is immaterial whether the trial court improperly admitted parol evidence, which we do not decide, of such conversations as Hemenway may have had with MFA's agent. The trial court's finding that the policy issued by MFA was effective February 9, 1978, is compelled by the record without regard to those conversations.

Neb. Rev. Stat. § 44-359 (Reissue 1978) provides that one such as Hemenway who brings an action on a policy of insurance (with certain exceptions not material here) shall, upon obtaining judgment, be awarded a reasonable attorney fee, to be taxed as a part of the costs. The form of the action is not controlling. See, *State Farm Fire & Cas. Co. v. Muth,* 190 Neb. 248, 207 N.W.2d 364 (1973), holding that an insured who prevails is entitled to an attorney fee where the insurer brings a declaratory judgment action to determine coverage. MFA argues that since there was no evidence as to the amount of Hemenway's potential ultimate recovery from MFA, the trial court lacked an indispensable fact and thus could make no award. It is unquestionably true that one of the relevant considerations in determining a reasonable attorney fee is the amount involved in

the controversy. *Herrera v. American Standard Ins. Co.,* 203 Neb. 477, 279 N.W.2d 140 (1979); *Ruby Coop. Co. v. Farmers Elevator Mut. Ins. Co.,* 197 Neb. 605, 250 N.W.2d 239 (1977); *Schmer v. Hawkeye-Security Ins. Co.,* 194 Neb. 94, 230 N.W.2d 216 (1975). It cannot be said, however, that in the context of this case, evidence as to the amount of Hemenway's ultimate potential recovery was indispensable to the court's determination.

Lastly, MFA complains that the amount of the fee awarded, $4,923.75 together with certain otherwise nontaxable costs, is excessive because it includes time for services rendered in connection with third-party claims against plaintiff as a consequence of his inability to pay certain bills incurred as a result of the treatment of his heart condition. The record reflects the fee awarded includes 4½ hours at counsel's customary and reasonable charge of $65 per hour for such services. The inclusion of the amount of $292.50 in the award for services rendered in connection with the third-party claims is clearly erroneous. Such attorney fee as may be awarded under the provisions of § 44-359 must be solely and only for services actually rendered in the preparation and trial of the litigation on the policy in question. *Dale Electronics, Inc. v. Federal Ins. Co.,* 205 Neb. 115, 286 N.W.2d 437 (1979); *Herrera v. American Standard Ins. Co., supra.* The fee awarded is otherwise well within the trial court's discretion, *Herrera v. American Standard Ins. Co., supra.*

The judgment of the trial court should therefore be modified by reducing the amount of the attorney fee and otherwise nontaxable costs awarded to $4,717.67. The cause is remanded with directions to enter judgment in accordance with this opinion. Plaintiff-appellee is awarded the sum of $750 as an attorney fee to apply toward the services of his lawyer in this court.

AFFIRMED AS MODIFIED AND REMANDED WITH DIRECTIONS.