LEONARD J. VESELY, APPELLANT, v. NATIONAL TRAVELERS LIFE COMPANY, AN INSURANCE STOCK COMPANY, APPELLEE.

682 N.W.2d 713

Filed July 6, 2004.   No. A-03-050.

L.J. Karel, of Karel & Seckman, for appellant.

Bryan S. Hatch, of Stinson, Morrison & Hecker, L.L.P., for appellee.

IRWIN, Chief Judge, and SIEVERS and CASSEL, Judges.

SIEVERS, Judge.

## INTRODUCTION

Leonard J. Vesely appeals the decision of the Colfax County District Court, which sustained the summary judgment

motion of National Travelers Life Company (Travelers) and overruled Leonard's summary judgment motion in an action for declaratory judgment. We address the jurisdictional question raised by the filing of a "pure" motion for new trial following the entry of summary judgment and whether such filing tolls the running of the 30 days in which to perfect an appeal to this court. We do so in light of the recent decision in *Central Neb. Pub. Power v. Jeffrey Lake Dev.*, 267 Neb. 997, 679 N.W.2d 235 (2004), which held that a motion, after the sustaining of a demurrer and a dismissal, requesting a new trial and requesting that the judgment be vacated was a motion to alter or amend judgment under Neb. Rev. Stat. § 25-1329 (Cum. Supp. 2002), which tolled the time to appeal.

## FACTUAL BACKGROUND

On November 9, 1998, Leonard and his wife, Darlene Vesely, along with general insurance agent Lonnie Hackbarth, completed Leonard's application for a "Major Medical Expense" policy with Travelers. The application stated that the "[e]ffective [d]ate of this policy is to be 11-9-98 to save Darlene's age of 57." Leonard and Darlene issued a check for a premium on the policy based on Darlene's age of 57. Travelers then issued a policy, and Hackbarth met with Leonard and Darlene to review the policy on December 22.

The policy issued by Travelers differed in several respects from the policy applied for. The issued policy included two loss elimination amendments, one excluding "[a]rthritis, including degenerative joint disease and any operation or treatment [there]for or complications thereof," and the other excluding "[i]nternal fixation of the left ankle, including removal or complications thereof." Coverage was in place in July 1999 when Leonard fell from a horse and injured his hip. Leonard filed a claim under his Travelers policy, which claim Travelers denied on the basis that the injury was arthritis related. Additional factual details are not necessary for our decision.

## PROCEDURAL BACKGROUND

Leonard filed a petition for a declaratory judgment on June 8, 2001, asking the court to determine the rights, duties, and obligations of the parties under the Travelers policy. Both parties

then filed motions for summary judgment alleging that there was no genuine issue of material fact. On November 6, 2002, the district court entered an order, sustaining Travelers' motion and overruling Leonard's motion for summary judgment and dismissing the petition. Leonard filed a "Motion for New Trial," which we detail in our jurisdictional discussion.

## ASSIGNMENTS OF ERROR

Leonard asserts, restated, that the trial court erred in overruling his motion for summary judgment and granting Travelers' motion for summary judgment.

## STANDARD OF REVIEW

■ When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below. *Shearer v. Leuenberger*, 256 Neb. 566, 591 N.W.2d 762 (1999).

## JURISDICTIONAL ANALYSIS

■ It is not only within the power but it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Cerny v. Longley*, 266 Neb. 26, 661 N.W.2d 696 (2003); *Thompson v. Kiewit Constr. Co.*, 258 Neb. 323, 603 N.W.2d 368 (1999). We earlier overruled Travelers' motion to dismiss Leonard's appeal for lack of jurisdiction, but now write in detail about that subject. We ordered that the case proceed without oral argument pursuant to our authority under Neb. Ct. R. of Prac. 11B(1) (rev. 2000).

After the trial court granted Travelers' motion for summary judgment and denied Leonard's similar motion, on November 12, 2002, Leonard filed a motion for new trial. The trial court overruled such motion on December 18. Leonard then filed his notice of appeal on January 15, 2003, more than 30 days after the entry of summary judgment but within 30 days of the overruling of the motion for new trial. Consequently, for us to have jurisdiction, the motion had to be a tolling motion.

■ In 2000, the Nebraska Legislature amended the statute governing a motion for new trial in a civil action, see Neb. Rev. Stat. § 25-1142 (Cum. Supp. 2002), altering the definition of a "new trial." Prior to the amendment, the statute defined a new

trial as "a reexamination in the same court of an issue of fact after a verdict by a jury, [a] report of a referee, or a decision by the court." See § 25-1142 (Reissue 1995). After the amendment, § 25-1142 (Cum. Supp. 2002) provides that a new trial "is a reexamination in the same court of an issue of fact after a verdict by a jury, [a] report of a referee, *or a trial and decision by the court.*" (Emphasis supplied.)

We note that the Nebraska Supreme Court in *Cerny, supra,* recognized the change in the statute. But, for the instant case, it is the *Cerny* dicta which draw our attention:

> The plaintiffs argue that a motion for new trial was procedurally improper in this case because there was never a "verdict by a jury," a "report of a referee," or a "trial and decision by the court." We agree that the 2000 amendment to § 25-1142 raises a legitimate question of whether a motion for new trial can ever be utilized as a means of seeking review by the trial court of a summary judgment or other final disposition which is not the result of a trial. We note that § 25-1329, which authorizes a motion to alter [or] amend a judgment, does not contain a similar reference to a "trial." However, we need not resolve this issue here because of a related but distinct jurisdictional deficiency.

266 Neb. at 30, 661 N.W.2d at 699-700.

The jurisdictional issue which the Supreme Court foresaw in *Cerny* is now rather squarely before us. But, after *Cerny,* the Supreme Court decided *Central Neb. Pub. Power v. Jeffrey Lake Dev.,* 267 Neb. 997, 679 N.W.2d 235 (2004). The latter decision causes us to examine the nature of a motion for new trial because in 2000, when the Nebraska Legislature amended the new trial statute, it also, in the same legislation, authorized a new procedural device, a "motion to alter or amend a judgment." § 25-1329. Like a motion for new trial, a motion to alter or amend a judgment must be filed no later than 10 days after the entry of the judgment and tolls the running of the 30 days in which to file a notice of appeal. See Neb. Rev. Stat. § 25-2729 (Cum. Supp. 2002). However, the motions are distinguishable because a motion to alter or amend does not reference a new trial; nor does the motion to alter or amend statute set forth statutory grounds for its employment, as does the motion for new trial

statute, § 25-1142. The comments prepared by the reporter for the Nebraska Supreme Court Committee on Practice and Procedure, which developed the language for the enactments and presented such language to the Nebraska Legislature's Judiciary Committee, provide the reason for and explanation of the amendment to the new trial statute and the creation of a new device, the motion to alter or amend. The reporter's comments state:

> The additional language in [§] 25-1142 is intended to make clear that the motion for a new trial is appropriate only where there has been a trial, and that this section does not provide a general motion for reconsideration. . . .
>
> . . . .
>
> The proposed section defining a motion to alter or amend a judgment is comparable to the motion defined in [Fed. R. Civ. P.] 59(e). It provides a procedure other than a motion for a new trial for obtaining immediate reconsideration in the trial court of a decision based on something other than a trial. . . . [I]t could be used to obtain immediate reconsideration of [a] grant of summary judgment.

Judiciary Committee Hearing, L.B. 921, 96th Leg., 2d Sess. 6-7 (Jan. 19, 2000). Therefore, a motion to alter or amend and a motion for new trial were, at least, intended to be different.

■■■ A determination as to whether a motion, however titled, should be deemed a motion to alter or amend a judgment depends upon the contents of the motion, not its title. *State v. Bellamy*, 264 Neb. 784, 652 N.W.2d 86 (2002); *Lee Sapp Leasing v. Ciao Caffe & Espresso, Inc.*, 10 Neb. App. 948, 640 N.W.2d 677 (2002). In order to qualify for treatment as a motion to alter or amend a judgment, a motion must seek substantive alteration of the judgment. *Bellamy, supra.* In contrast, a motion for new trial is based on "the following causes, affecting materially the substantial rights of [the] party [aggrieved]: . . . (6) . . . the verdict, report or decision is not sustained by sufficient evidence, or is contrary to law." See § 25-1142.

In the present case, Leonard's pleading is entitled "Motion for New Trial," and by his use of the statutory language, we conclude that Leonard filed a motion for new trial: "COMES NOW [Leonard], by and through his undersigned counsel, and moves the court for a new trial for the following reasons, to-wit: 1. That

the verdict is not sustained by sufficient evidence. 2. That the verdict is contrary to law."

The jurisdictional issue presented in the instant case is whether a trial court's decision on a motion for summary judgment is a "trial and decision by the court," § 25-1142, because if so, the motion for new trial would toll the running of the 30 days in which to appeal. We first discuss this issue without consideration of the effect of *Central Neb. Pub. Power v. Jeffrey Lake Dev.*, 267 Neb. 997, 679 N.W.2d 235 (2004).

■ Clearly, after a summary judgment, there is a decision by the trial court; but has there been a trial? Neb. Rev. Stat. § 25-1103 (Reissue 1995) defines a trial as a "judicial examination of the issues, whether of law or fact in an action." In *Otteman v. Interstate Fire & Cas. Co., Inc.*, 171 Neb. 148, 105 N.W.2d 583 (1960), the Nebraska Supreme Court was faced with the issue of whether an order vacating a summary judgment and granting a new trial is an order or judgment from which an appeal may be taken. In *Otteman*, the trial court sustained the defendant's motion for summary judgment and dismissed the plaintiff's petition. The plaintiff then filed a motion denominated as a motion for new trial, which motion was sustained. The defendant appealed the order sustaining the motion for new trial. The plaintiff asked the Supreme Court to dismiss the appeal on jurisdictional grounds. The Supreme Court said that "the proceedings which lead to a summary judgment and the rendition of such a judgment must be regarded as a trial" before the order sustaining the motion for new trial is appealable. *Id.* at 152, 105 N.W.2d at 586. In short, the court said that in order to grant a new trial, which is a " 're-examination in the same court of an issue of fact after a verdict by a jury, [a] report of a referee, or a decision by the court,' " *id.* at 154, 105 N.W.2d at 587, there must have been a trial or initial examination.

The *Otteman* court defined a trial as " '[t]he examination before a competent tribunal, according to the law of the land, of the facts or law put in issue in a cause, for the purpose of determining such issue.' " 171 Neb. at 153, 105 N.W.2d at 586, quoting Black's Law Dictionary (3d ed. 1933). This definition is substantially similar to the definition of trial found in § 25-1103. The *Otteman* court said that the summary judgment process

"avoids the weighing of evidence and requires the determination to be based upon the sole question of whether or not there is any genuine issue of fact." 171 Neb. at 151, 105 N.W.2d at 586. Thus, the *Otteman* court determined, "[T]he Legislature in the enactment of the summary judgment act attempted to and at least inferentially did distinguish the summary judgment process from a trial." 171 Neb. at 153, 105 N.W.2d at 587. See Neb. Rev. Stat. §§ 25-1332 and 25-1333 (Reissue 1995). Therefore, the *Otteman* court concluded:

> In the light of this [examination of the summary judgment statutes,] the conclusion reached is that an exercise of the process prescribed by the summary judgment act is not a trial within the meaning of that term and a judgment in favor of a movant is not one rendered as the result of a trial.

171 Neb. at 154, 105 N.W.2d at 587. Further, the court stated, "There having never been a trial [because summary judgment was granted,] an order vacating a judgment and allowing for the first time a trial on the issues in the action cannot be regarded as the granting of a new trial." *Id.* Thus, the *Otteman* court, finding that the order vacating and setting aside the summary judgment was not an appealable order, sustained the plaintiff's motion to dismiss the appeal.

In addition to the foregoing authority that a summary judgment is not a trial, we also examine the legislative intent concerning the 2000 amendments at issue. First, a comment regarding the amendment to the new trial statute, § 25-1142, discusses "trial" in the context of "actual trial" and "a party who has actually litigated and obtained a verdict." See Judiciary Committee Hearing, L.B. 921, 96th Leg., 2d Sess. 6 (Jan. 19, 2000). The comment also provides that a motion to alter or amend is a way to seek relief concerning summary judgment because the motion to alter or amend is for "a decision based on something other than a trial." *Id.* at 7. Therefore, based on the legislative intent as to the amendment to the new trial statute, on the addition of a "motion to alter or amend" to our procedures, and on the Supreme Court's decision in *Otteman v. Interstate Fire & Casualty Co.*, 171 Neb. 148, 105 N.W.2d 583 (1960), we hold that summary judgment is not a trial within the meaning of the new trial statute, § 25-1142.

Except for the opinion in *Central Neb. Pub. Power v. Jeffrey Lake Dev.*, 267 Neb. 997, 679 N.W.2d 235 (2004), we would quite obviously conclude at this point that Leonard's "pure" motion for a new trial ("pure" in the sense that it requests only a new trial and is premised on two grounds directly from § 25-1142) did not toll the running of the 30 days to appeal after summary judgment. However, we must now consider the impact of *Central Neb. Pub. Power* on this case.

In *Central Neb. Pub. Power, supra*, the trial court said that the motion at issue which asked for a new trial after dismissal on a demurrer could not be a proper motion for new trial because there was no verdict by a jury or trial and decision by the court. The Supreme Court then examined whether the motion could be treated as a motion to alter or amend under § 25-1329, which would toll the appeal time. The motion, which also asked that the operative order of dismissal be vacated on the ground that the decision was contrary to law, was said by the Supreme Court to seek "substantive alteration" of the order—meaning that it could be treated as a motion to alter or amend, because the motion questioned the correctness of the judgment. *Id.* at 1000, 679 N.W.2d at 239. By focusing on the motion's request to "vacate" the order of dismissal, *id.*, the *Central Neb. Pub. Power* court found that the motion was a tolling motion to alter or amend. In short, the request that the order of dismissal be vacated was the magic bullet which saved the appeal from being dismissed for lack of jurisdiction. We now apply the lesson of *Central Neb. Pub. Power* to the instant case.

Here, Leonard's motion, while asking for a new trial on two statutory grounds, does not ask for vacation of the judgment, and thus, the saving grace of the word "vacate" to make a "pure" motion for new trial into a tolling motion to alter or amend is missing. However, we cannot find that this omission prevents tolling, despite our recitation of authority dictating the conclusion that a summary judgment proceeding is not a trial and decision by the court—the prerequisite for tolling when a motion for new trial is filed. Our rationale is that the new trial statute, § 25-1142, says that when such a motion is to be sustained, the "former verdict, report, or decision shall be vacated and a new trial granted." To us, this language makes a request for vacation

of the judgment inherent in any motion for new trial and makes an actual request to that effect superfluous because granting a new trial without vacating the earlier judgment would be an empty and meaningless act. Thus, pursuant to *Central Neb. Pub. Power*, the motion for a new trial here can be treated as a motion to alter or amend because, of necessity, it asks for vacation of the earlier judgment. Such a request, under *Central Neb. Pub. Power*, tolls the 30-day appeal time and makes Leonard's appeal timely. Thus, we turn to the merits of the case, as we have jurisdiction.

## ANALYSIS

Leonard asserts that the trial court erred in granting summary judgment in favor of Travelers because the loss elimination amendments that excluded coverage for arthritis and internal fixation of the left ankle were not part of the policy. Leonard argues that his failure to sign an "Amendment of Application" agreement, which provided a different effective date and stop-loss level than he applied for, constituted a denial of the accompanying loss elimination amendments, even though he signed the loss elimination amendments. Leonard claims, "The three [loss elimination] amendments rise or fall together based upon whether or not the amendment of application [agreement] is sufficient to constitute amendment of the application and of the effective policy date." Brief for appellant at 12.

An insurance policy is a contract which requires an offer and acceptance to be effective. *Callahan v. Washington Nat. Ins. Co.*, 259 Neb. 145, 608 N.W.2d 592 (2000). An application for insurance is simply an offer, as is the issuance of an insurance policy, and must have acceptance to have contractual effect. *Lindsay Ins. Agency v. Mead*, 244 Neb. 645, 508 N.W.2d 820 (1993); *Hemenway v. MFA Life Ins. Co.*, 211 Neb. 193, 318 N.W.2d 70 (1982). Thus, under those principles, Leonard's application for insurance constituted merely an offer to Travelers.

Based upon Leonard's offer found in his application, Travelers had to decide whether to accept the offer by issuing a policy as applied for or to counteroffer by issuing a policy different from that applied for. If an insurance company issues a policy that conforms to the application, the contract is accepted and becomes complete on delivery, but if the policy issued differs

from the terms proposed, then it constitutes a mere counteroffer. See *Lindsay Ins. Agency, supra*. The tender of a policy substantially different from that requested will not entitle the insurer to recover premiums for the policy, unless the insured accepts the policy. See *id*.

In *Hemenway, supra*, the issue before the court was whether an insurance policy issued by the defendant provided coverage, based on the effective date of the policy, for a heart condition which manifested itself on March 13, 1978. The application for insurance was submitted on February 9, but the policy issued on March 25 stated that the effective date of the policy was March 16. The defendant argued that because the application for insurance did not contain any request to exclude coverage for inguinal hernias and the policy issued had an endorsement exempting coverage for inguinal hernias, the policy issued was a counteroffer, making the effective date March 16. The plaintiff argued that he had met all the conditions required by a conditional receipt, that the policy conformed to the insurance he applied for, and that therefore, the policy was not a counteroffer and coverage began February 9.

The *Hemenway* court found that the insurance applied for provided coverage under a benefit schedule "G," but that schedule "G" excluded surgical and in-hospital treatment for hernias of any kind. The court concluded that

> since the policy of health insurance applied for by [the] plaintiff provided for the exclusion of hernia coverage of any kind, the addition of the inguinal hernia endorsement by [the defendant] does not vary the terms of the insurance applied for by [the] plaintiff and cannot constitute a counteroffer of insurance.

211 Neb. at 202, 318 N.W.2d at 75-76. Therefore, the court found that the plaintiff had met the requirements under the conditional receipt and that the policy was effective as of February 9, which effectiveness had the result of providing coverage for the heart condition occurring on March 13.

In the present case, the only reference in the policy to an exclusion for arthritis, which exclusion is the subject of the loss elimination amendment at issue, is found in a preexisting conditions limitation within the "Exceptions and Limitations" section.

The preexisting conditions exclusion states: "Pre-existing conditions, not excluded by name or specific description [are not covered] during the first twelve months your coverage is in force." However, in his application, when asked whether he had had diagnosis of or treatment for "the muscles, bones or joints, including back, spine or feet, arthritis, gout, rheumatism, back pain [et cetera]," Leonard answered, "No." Thus, unlike the circumstances in *Hemenway v. MFA Life Ins. Co.*, 211 Neb. 193, 318 N.W.2d 70 (1982), here, the application for insurance was not substantially similar to the policy issued, because the policy applied for excluded arthritis only if it was preexisting; the policy issued specifically excluded not only preexisting, but *any*, "[a]rthritis, including degenerative joint disease and any operation or treatment [there]for or complications thereof." In short, the application Leonard submitted did not indicate that arthritis or degenerative joint disease was a preexisting condition, but the policy issued excluded any arthritic condition, resulting in a variation of the insurance for which Leonard applied. Therefore, we find that the Travelers policy constituted a counteroffer that had to be accepted by Leonard in order for Travelers to recover premiums on the policy. See *Lindsay Ins. Agency v. Mead*, 244 Neb. 645, 508 N.W.2d 820 (1993).

The issue, then, is whether Leonard accepted the policy. On December 22, 1998, upon delivery of the policy, Hackbarth explained the amendments to Leonard. Leonard then signed both loss elimination amendments, but did not sign the "Amendment of Application" agreement. Additionally, he signed the "Delivery Receipt," which stated in part: "I hereby acknowledge receipt of the policy delivered to me by my agent. The agent has explained to me and I understand the benefits, expenses, limitations to the coverage, [and] the date on which the insurance begins, as they all appear in the policy." Further, Leonard paid the premiums on the policy until October 2001. Therefore, we find that Leonard's signature on the delivery receipt and the loss elimination amendments, as well as payment of the premium, constituted acceptance of the policy, including both loss elimination amendments. Even though Leonard did not date the amendments when he signed them, he did not object to Hackbarth's inserting the date; nor did his acceptance depend on his writing the date. See *Gesell*

*v. Reeves*, 229 Neb. 842, 429 N.W.2d 363 (1988) (party to contract can waive provisions of contract made for his or her benefit). Therefore, the policy included the loss elimination amendment that excluded coverage for arthritis.

Even if Leonard did not accept Travelers' counteroffer—the policy including the amendments—his argument that the original policy that he applied for was revived by his failure to accept the amendments is without merit. Because Travelers' policy was a counteroffer, if Leonard failed to accept such counteroffer by not signing or dating the amendments, as he argues, then there simply was no contract, and no insurance coverage. See *Lindsay Ins. Agency, supra* (issuance of insurance policy is merely offer and must be accepted to have contractual effect). The original offer—Leonard's application, which does not exclude arthritis—was not "revived" if he did not accept Travelers' counteroffer, because a counteroffer is a rejection of the original offer. See *Logan Ranch v. Farm Credit Bank*, 238 Neb. 814, 472 N.W.2d 704 (1991). Because Travelers issued a policy different from that applied for, which issuance constituted a counteroffer, Leonard's application was rejected. Thus, Leonard's original offer was terminated by the counteroffer. Further, if Leonard did not accept Travelers' counteroffer, then the original offer would have been revoked and there would have been no effective insurance policy because there was no contract. However, that was not the case here, as admitted by Leonard in his petition. He alleges, and Travelers concedes in its answer, that the Travelers policy was in full force and effect at the time of the accident. Matters contained in pleadings are judicial admissions insofar as the adversary is concerned, and admissions contained in a defendant's answer waive all controversy concerning the matter. *Dorszynski v. Reier*, 6 Neb. App. 877, 578 N.W.2d 457 (1998). Therefore, we find that Leonard accepted the counteroffer, which was the policy that included the loss elimination amendment excluding coverage for arthritis, because that was the only pending offer providing coverage. Thus, we find that the trial court did not err in granting Travelers' summary judgment motion. The trial court's order is affirmed.

AFFIRMED.