[No. 23146. Department One. July 24, 1931.]

ALEX McGREGOR, *as Guardian ad Litem of Albert Allen and Peter McGregor, Jr., Minors, Respondent,* v. NEW WORLD LIFE INSURANCE COMPANY, *Appellant.*[1]

*Graves, Kizer & Graves,* for appellant.
*Richard B. Ott,* for respondent.

MAIN, J.—This action was brought upon a life insurance policy which provided for double indemnity in the event the death of the assured occurred through accidental means. The plaintiff, as guardian *ad litem* for the two minors, who were named as beneficiaries in the policy, brings the action. The cause was tried to the court without a jury, and resulted in a judgment in favor of the plaintiff in the sum of $1,500, together with

[1]Reported in 1 P. (2d) 908.

interest and costs; and from this judgment the defendant appeals.

The facts are these: Alex McGregor owned and operated what is referred to as the Bar U Ranch, in Adams county, this state. Archie O. Johnson had been employed as foreman upon the ranch for a number of years. February 4, 1930, Jack Clancey and Harry Ludwig came to the ranch house with a gallon or more of moonshine whiskey. They were strangers to McGregor, but he invited them into the house, and the three sat down in the living room, where for three or four hours they drank the liquor and talked. At about three or four o'clock in the afternoon, McGregor's step-son, Albert Allen, a boy of about thirteen years of age, upon returning from school entered the ranch house through the front door into the living room. At this time McGregor, Clancey and Ludwig were quarreling. The boy passed out of the house, and at this time Johnson drove up in his automobile. The boy told him what was going on in the living room, and suggested that he go in.

Johnson entered the house through the kitchen door, and, as he did so, he met McGregor, who had come from the living room, with a wound on his head, his face and clothing covered with blood, and apparently in an intoxicated condition. After the boy had passed through the living room, and prior to the time McGregor and Johnson met in the kitchen, a fight between McGregor and the two others mentioned had taken place in the living room. McGregor told Johnson, when he met him in the kitchen, not to go into the living room, that the men were armed, and to let them alone. Johnson went to the door of the living room, and, as he was entering, Ludwig fired three shots at him, one of which struck him, and he died later in the

day. At the time Johnson was entering the living room from the kitchen, Clancey had left that room by the front door and was several paces away. Ludwig was either just going out of the door or had stepped out a few feet, and, when he saw Johnson entering through the other door, turned and fired the shots, with the result stated.

The question is whether Johnson's death was accidental within the meaning of the policy, which provided for double indemnity in event of death from bodily injuries "effected solely through external, violent and accidental means . . ." The fact that Johnson voluntarily entered the living room, and that the shooting was the intended act of Ludwig, does not prevent the death from being accidental unless (a) Johnson by misconduct invited the act of Ludwig; (b) he voluntarily and knowingly entered into danger; or (c) the act of Ludwig was reasonably to be anticipated by him. If Johnson was not guilty of misconduct, did not know and appreciate the danger, or if the risk was not so apparent that an ordinarily reasonable man would be held to have known and appreciated it, the killing was accidental within the meaning of the policy.

In *Employers' Indemnity Corporation v. Grant*, 271 Fed. 136, it is said:

"In some cases, however, the insured met his death, as the result of an intentional and designed killing of some third person, and if such killing was not the direct result of misconduct of the deceased, or was unforeseen and not reasonably to be anticipated by him, then his death is held to be the result of external, violent and accidental means. For cases so holding, see the following: (Citing cases.)"

In *Rowe v. United Commercial Travelers' Assn.*, 186 Iowa 454, 172 N. W. 454, 4 A. L. R. 1235, it is said:

"He must have known and appreciated the danger, or the risk must have been so apparent that as an ordi-

narily reasonable man he must be held to have known and appreciated it, and with that knowledge have intentionally taken the risk. The act which brings him into danger may be voluntary, yet the exposure be involuntary.''

The cases of *Union Casualty & Surety Co. v. Harroll,* 98 Tenn. 591, 40 S. W. 1080, 60 Am. St. 873; *Lovelace v. Travelers' Protective Assn.,* 126 Mo. 104, 28 S. W. 877, 47 Am. St. 638, 30 L. R. A. 209; *Postler v. Travelers' Ins. Co.,* 173 Cal. 1, 158 Pac. 1022; and others that might be cited, are to the same effect. The law on the question appears to be well settled, and it is not necessary here to multiply the citations.

The inquiry must then be directed to whether Johnson was guilty of misconduct, knowingly entered into danger, or did not act as a reasonably prudent man would have, in entering the living room. Ludwig and Clancey were entire. strangers to Johnson. He knew that they were armed, and it is a fair assumption that he knew they were intoxicated, and that they had been fighting with McGregor. There is a little conflict in the evidence over the time that Johnson, in severe and strong language, addressed Ludwig and Clancey, but when the evidence is properly considered and fairly weighed, we are satisfied that this remark of Johnson was after he was shot, and that, prior to the shooting, he had spoken no word but had simply entered the door of the living room. Even though Johnson knew that Clancey and Ludwig were intoxicated, that they were armed, and that they had been in a fight, he had no reasonable ground to believe that if he entered the room, a total stranger to them, without doing anything to provoke trouble, he would be immediately shot. Under the facts of this case, we are of the opinion that it should not be held that Johnson knew of the danger and intentionally entered into it,

or that, under the circumstances, he did not act as a reasonably prudent man would in going into the living room.

After considering all the facts and the law which is applicable thereto, we are of the opinion that Johnson's death was accidental within the meaning of the policy.

The judgment will be affirmed.

TOLMAN, C. J., PARKER, MITCHELL, and HOLCOMB, JJ., concur.