**REPUBLIC NATIONAL LIFE INSURANCE COMPANY, a corporation, Plaintiff in Error,**

v.

**Vernon J. R. JOHNSON, Defendant in Error.**

No. 37521.

Supreme Court of Oklahoma.

Oct. 29, 1957.

Wayne B. Snow, of Savage, Gibson, Benefield & Shelton, Oklahoma City, for plaintiff in error.

Jack B. Sellers, Drumright, for defend-ant in error.

HALLEY, Justice.

This action was filed in the Superior Court of Creek County by Vernon J. R. Johnson against Republic National Life Insurance Company to recover under an accident and health policy held by the plaintiff. We shall refer to the insured as plaintiff and the insurance company as defendant.

The parties entered into the following stipulation, to-wit:

1. The plaintiff sustained injuries on May 10, 1954;

2. The policy of insurance here sued upon was in full force and effect at that time;

3. The Company received proper notification under the policy;

4. By reason of the injuries received by Mr. Johnson, he was hospitalized for a period of twenty-eight (28) days. The hospital charge for room and board was in excess of the maximum coverage of such item as provided by the policy of $5.00 per day;

5. Johnson incurred expenses in connection with hospital services in excess of

$50.00 maximum coverage provided by the policy.

The principal issue tried and submitted to the jury was whether the injuries sustained by the plaintiff were through accidental means. The policy of insurance was put in evidence and provides that a recovery for "injury" of the insured is limited to an injury " * * * effected solely through accidental means while this policy is in force."

The jury returned a verdict for the insured and the insurance company has appealed. Its principal complaints consist of alleged errors of the court in excluding certain evidence offered by the defendant, error in instructions given and refused, and especially in failing to give the jury a correct definition of the terms "injury" and "accident." It is also complained that the jury failed to follow certain instructions given by the court and that the court should have directed a verdict for defendant.

The general view of the trial court as to what testimony was admissible to show whether an "accident" occurred is expressed when defendant offered evidence of things that occurred during the afternoon of May 10, 1954, between the plaintiff and Arthur Simpson. The court said in part as follows:

"This entire lawsuit is involving whether or not an accident occurred when a shooting took place to the effect that an insurance policy herein sued upon became subject to some liability by reason of that accident. What happened hours before can have nothing to do with the accident and we are not going into any evidence other than what took place out there."

It is well established that the injuries suffered by the plaintiff Vernon Johnson about 9 p. m. on May 10, 1954, were the result of being shot several times by Arthur Simpson. Defendant offered to prove by the plaintiff that he and Arthur Simpson drove to Drumright in Simpson's car about 3:30 p. m. on May 10, 1954; that they had been drinking beer together all that afternoon, beginning about 3:30 p. m. and continued to drink until about dark when they started home; that they were pretty drunk; and shortly after leaving Drumright they began to quarrel, and Simpson stopped his car and they got out and had a fight, after which Simpson got back in his car and left without the plaintiff, who went to a nearby house and called his wife in Shamrock, who came and picked him up and took him home; that later he got his Colt revolver and left home to go over on the lease where Simpson lives and where J. J. Collyar, his father-in-law lives, about one-half mile east of Shamrock; that he drove up to the back door of Collyar's house which is next door to Arthur Simpson's house, and got out of his car with his revolver in his pocket, and that Simpson came out of his back yard with a .22 automatic rifle in his hand, and came toward the plaintiff with his rifle drawn on plaintiff; that Simpson "hollered" at Collyar to turn on the light and said to plaintiff, "I'm going to kill you"; that as Simpson turned toward Collyar's house plaintiff shot Simpson; that they both shot each other several times. Plaintiff said he was still pretty drunk and that he and Simpson had always been good friends.

The defendant offered to prove by Mr. Collyar, father of Mrs. Johnson, that Arthur Simpson, who lived next door, came over to his house and while there Mr. Collyar received a telephone call from his daughter, Mrs. Vernon Johnson, who told him Mr. Johnson had left home with his gun and that he was going over to kill Arthur Simpson, and that they asked Arthur Simpson to leave and he went to his house which was next door.

The court refused to admit any testimony as to what happened between Vernon Johnson and Arthur Simpson before the shooting occurred.

The trial court appears by its instruction No. 3 to have the right theory of the principal issue to be decided when it instructed the jury as follows:

"You are instructed that the issue you must decide in this case is whether or not the admitted injury to the plaintiff was caused by accidental means."

█ However, the court refused to allow any testimony to go before the jury except what occurred at the very time of the shooting, which resulted in plaintiff's injuries. Defendant contends that was prejudicial error and cites Price v. Rogers, 201 Okl. 678, 209 P.2d 683, 684, wherein it was announced in the first paragraph of the syllabus as follows:

"All facts and circumstances which are relevant to the issues made by the pleadings in a suit are admissible in evidence, unless the exclusion of. any such fact or circumstance is required by some established principle of evidence; a fact or circumstance is relevant if it legally tends to prove some matter in issue or to make a proposition in issue more or less probable."

█ When it is remembered that the time of the happening of the events, and offered to be proven by the defendant, all occurred between about 3:30 p. m. and 9 o'clock p. m., when the shooting and injuries occurred, we think the testimony offered as to such happenings should have been admitted so that the jury could better determine the question of whether the injuries resulting from them were accidental.

█ It is next contended that the court erred in refusing to admit in evidence the case history of Vernon Johnson which was brought to the witness stand by Dr. Bassett, one of the physicians who treated him after he was shot by Arthur Simpson as above outlined. We conclude that there was no error in excluding the record mentioned because we can see no serious harm to the defendant by its rejection, and the doctor's oral testimony was sufficient to disclose the case history of Vernon Johnson.

█ The court refused to allow the testimony of the wife of Vernon Johnson to go to the jury upon the ground that the wife is not competent to testify, either for or against her husband by reason of Section 385, 12 O.S.1951, as amended by S.L. 1953, p. 52, which prohibits husband or wife from testifying for or against the other, except where one acted as the agent of the other, "or in an action growing out of personal injuries to either spouse." While this is an action upon an insurance policy, growing out of personal injuries to the husband, it is claimed by. him to be accidental. In view of the fact that had plaintiff suffered no personal injury he would have had no cause of action against the insurance carrier, we think the court erred in refusing to permit Mrs. Johnson to testify. She knew some very material facts bearing upon the question of whether the injuries were received "* * * solely through external, violent and accidental means * * *" as expressly provided by the terms of the policy involved.

█ Defendant complains of the refusal to give requested instruction No. 2 and the giving of instruction No. 4. Its requested instruction No. 2, refused by the court, is as follows:

"You are instructed that for the plaintiff, Johnson, to recover you must find that any injury to him was bodily injury causing the loss directly and independent of all other causes, and effected solely through accidental means while the policy here sued upon was in force."

The court, in instruction No. 4, said:

"In this connection you are instructed that an 'accident' as that term is used in this lawsuit means anything happening unexpectedly or without known or assignable cause; an event the cause of which was unforeseen; any unpleasant or unfortunate occurrence causing loss, injury, suffering or death."

In United States Fidelity & Guaranty Co. v. Briscoe, 205 Okl. 618, 239 P.2d 754, 757, the court said in regard to the meaning of the words "accident" and "accidental" as follows:

"Accident. An event that takes place without one's foresight or ex-

pectation; an undesigned, sudden and unexpected event, chance, contingency."

"Accidental" means Happening by chance or unexpectedly, Undesigned; unintentional; unforeseen, or unpremeditated."

In Bosley v. Prudential Ins. Co., 192 Okl. 304, 135 P.2d 479, 481, a life policy with double indemnity clause, where death is caused by accidental means, was involved. The court said:

"To impart an accidental character to the means of death, the occurrence relied upon must be 'unexpected, unforeseen, and involuntary'. Prudential Insurance Co. of America v. Tidwell, 163 Okl. 39, 21 P.2d 28. * * *"

While instruction No. 4 given by the court was in general to the same effect as defendant's requested instruction No. 3, the court added to the definition of accident these words " * * * occurrence causing loss, injury, suffering or death." We think the addition of these words was erroneous. Certainly an accident is not necessarily an unpleasant or unfortunate occurrence that results in "loss, injury, suffering or death." It does not necessarily follow that plaintiff's gunshot wounds were unexpected, unforeseen and involuntary.

In North American Acc. Ins. Co. v. Callicutt, 206 Okl. 10, 240 P.2d 751, we had under consideration the question as to whether death was accidental when it resulted from a gunshot wound intentionally inflicted. There we said:

"Death is accidental within the meaning of an accident insurance policy indemnifying insured for loss of life caused by accidental means when it results from a gunshot wound intentionally inflicted upon the person of insured by another without provocation or wrong doing on the part of insured."

We think that this statement controls in this case and the jury should have been instructed in conformity therewith.

We are also of the opinion that the evidence of what happened between plaintiff and Simpson from 3:30 p. m. to 9:00 p. m. on the day of the shooting should have been permitted to go to the jury. Such testimony would have enabled the jury to determine whether plaintiff's injuries were brought about solely by accidental means and whether they were the result of provocation by the aggressive and intentional acts of the plaintiff by going to the house of Arthur Simpson at 9:00 p. m. with the avowed purpose of killing him.

The judgment is reversed with directions to grant a new trial.

WELCH, C. J., CORN, V. C. J., and JOHNSON, WILLIAMS, BLACKBIRD and CARLILE, JJ., concur.

JACKSON, J., concurs in result.